IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Beverly Mahomes, Plaintiff,

vs.

John E. Potter, Postmaster General, Defendant.

C. A. No. 2:06-3634-CWH

**ORDER**

On December 27, 2006, the plaintiff, Beverly Mahomes (the "plaintiff"), filed this suit against the defendant, Postmaster General John E. Potter (the "defendant"), alleging that her employment was terminated because of her race (African-American) and in retaliation for having engaged in activities protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17 (2000). On May 16, 2008, the defendant moved for summary judgment. On September 25, 2008, Magistrate Judge Robert S. Carr ("Magistrate Judge Carr") issued a report analyzing the issues and recommending that the Court grant the defendant's motion for summary judgment. On October 14, 2008, the plaintiff filed her objections to the report and recommendation, and on October 20, 2008, the defendant filed his reply to the objections.

This matter is now before the Court for disposition. The Court is charged with making a *de novo* determination of any portions of the magistrate judge's recommendation to which specific objection is made. 28 U.S.C. § 636(b). The Court evaluates the evidence without granting any deference to the magistrate judge's findings and conclusions. Matthews v. Weber,



#1 Cert.

423 U.S. 261, 270-71 (1976); Estrada v. Witkowski, 816 F.Supp. 408, 410 (D.S.C. 1993). The final decision is made by the Court based upon the actual record, not merely the magistrate judge's reported findings. Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985). The Court may accept, reject, or modify, in whole or in part, the report and recommendation, or recommit the matter with instructions. 28 U.S.C. §636(b)(1).

The plaintiff brought two causes of action: (1) a claim that she was subjected to disparate disciplinary treatment on account of her race, resulting in wrongful termination; and (2) a claim that she was subjected to retaliation and eventual wrongful termination for engaging in activities protected by Title VII, specifically for filing complaints with the Equal Employment Opportunity Commission ("EEOC") and grievances with the National Association of Letter Carriers (the union). Magistrate Judge Carr recommended that the plaintiff's claim for wrongful termination be dismissed because the plaintiff's employment had been terminated because of her repeated misconduct and violations of Postal Service procedures, and her termination was in compliance with its progressive disciplinary policy.[1] Magistrate Judge Carr found that the plaintiff could not rebut this legitimate non-pretextual reason and show pretext for race-based animus. Furthermore, the Magistrate Judge recommended that the plaintiff's retaliation claim should be dismissed because the plaintiff failed to exhaust her administrative remedies prior to bringing

---

1 The National Agreement between the Postal Service and the union sets out the progression to different levels of corrective disciplinary action as follows: first offense–Letter of Warning; second offense–a 7-Day Suspension; third offense–a 14-Day Suspension; fourth offense–a 30-Day Suspension, fifth and final offense–Removal. The record reflects that these progressive disciplinary steps were followed in this case. The plaintiff's immediate supervisor, Robin Chavis, testified that the plaintiff had been issued all steps of discipline prior to being issued a letter of removal in December 2005. (See Chavis EEOC Investigative Affidavit at ¶ 9 (Docket # 67-21)).



#2 CWA.

this action. Magistrate Judge Carr found that even if the plaintiff had exhausted her administrative remedies as to her retaliation claim, the plaintiff could not establish the third element of her prima facie case (that she was performing her job duties at a level that met her employer's legitimate expectations), nor could she demonstrate the required pretext.

After a full review of the record and pertinent case law, the Court adopts the report and recommendation and grants summary judgment to the defendant.

**Background**

In 1985, the plaintiff began her employment as a letter carrier with the U. S. Postal Service in Chicago, Illinois. In 1988, the plaintiff transferred to Charleston, South Carolina. In October 2003, Tim Shaw (Caucasian) was appointed as the Postmaster in the area where the plaintiff worked. Later, the plaintiff transferred to the Post Office's North Charleston Branch and worked under an African-American branch manager. The plaintiff's employment was terminated by the defendant in 2006 because (1) she failed to follow a specific rule contained in the Employee and Labor Relations Manual ("ELM") when she did not immediately report an accidental fall which occurred on October 29, 2005; and (2) she failed to safely perform her mail-delivery duties, which caused her to fall.[2]

The plaintiff's termination for the October 29, 2005 disciplinary violation is viewed in light of the plaintiff's overall disciplinary history during the preceding two years. Pursuant to Article 16.10 of the National Agreement, a past offense is not to be counted against the employee

---

2 Pursuant to the ELM at Sections 814.2(d) and (f), employees are responsible for performing all their duties in a safe manner and must immediately report any accident or injury in which they are involved to their supervisor, regardless of the extent of the injury or the amount of the damage. (Docket # 67-2).





in the progressive disciplinary scheme if he or she has been discipline free for two years. In the time period relevant to this case prior to her removal, the plaintiff did not have a two year period in which she was free of disciplinary action.

The record reflects that on August 11, 2003, the plaintiff received a 14-day suspension, reduced to a 7-day suspension, for failing to obey a direct order and failing to observe postal safety rules by driving with her door open, failing to set the hand brake on her vehicle after stopping to park, and leaving her vehicle unlocked. The plaintiff filed a charge through the EEOC on May 21, 2003. During an August 19, 2003 arbitration, the plaintiff and Postmaster Shaw agreed to settle the charge and agreed that the suspension would be reduced to a 7-day suspension which would be reissued on September 18, 2003. In exchange, the plaintiff agreed to withdraw her EEOC charge.

On February 24, 2004 and March 1, 2004, Customer Service Supervisor Renee Swain (African-American) informed manager Steve Gadson (Caucasian) that the plaintiff had refused to stop wearing headphones while walking, which is prohibited for safety reasons. The plaintiff received a 14-day suspension on April 21, 2004, for twice failing to follow instructions, unacceptable conduct, and failure to safely perform the duties of her position. On May 21, 2004, the plaintiff filed an EEOC charge regarding this discipline; the charge was resolved against her on January 4, 2005.

On January 15, 2005 and January 21, 2005, the plaintiff sent unprofessional notes to a postal customer, who complained to the plaintiff's supervisors. Supervisor Robin Chavis (African-American) requested that the plaintiff be removed for unacceptable conduct. The plaintiff filed a grievance with the union and on March 31, 2005, the plaintiff received a reduced



#4 CWH.

punishment consisting of a 30-day suspension, from April 16, 2005 through May 15, 2005. On May 31, 2005, the plaintiff filed an EEOC charge over this discipline; the charge was resolved against her on July 12, 2005.

On October 29, 2005, the plaintiff fell while delivering mail. This incident resulted in her termination and is the basis of the present action. On November 3 or 4, 2005, some four or five days after the plaintiff fell, she reported the accident and notified her supervisor, Chavis, that she had incurred a work-related injury. Chavis initiated a disciplinary action against the plaintiff on December 6, 2005, for failing to safely perform her duties, which failure resulted in a fall on October 29, 2005, and for failing to immediately report the accident. On December 8, 2005, Chavis sent the plaintiff a Notice of Removal letter which stated that the plaintiff would be removed from the Postal Service effective 30 days from the date of her receipt of the letter. The plaintiff filed an appeal under the union's grievance-arbitration procedure and also filed an EEOC charge. The plaintiff's removal was upheld by the union at Step A and Step B. The plaintiff was allowed to continue working while she contested her removal. While her appeal was pending, the plaintiff again injured herself when she tripped over a tree stump on January 10, 2006, but she did not notify anyone until four days after the accident. The issue of whether the Postal Service had just cause to issue a Notice of Removal to the plaintiff on December 8, 2005 went to arbitration on March 1, 2006, and it was determined on April 29, 2006 that the plaintiff was discharged for just cause. Before the decision was issued, on April 18, 2006, the plaintiff filed a charge with the EEOC alleging race and gender discrimination and retaliation. She received an EEOC right to sue advisory as part of the final agency determination that her charge had no merit, and filed the present action.





**Standard of Review**

When a party has moved for summary judgment, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). An issue of such material fact is "genuine" if the evidence so offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

**The Plaintiff's Objections**

The plaintiff objects to Magistrate Judge Carr's report and recommendations which found that she had failed to establish a prima facie case for either disparate discipline or discriminatory discharge due to race discrimination under Title VII. Furthermore, the plaintiff objects to the Magistrate Judge's findings that the plaintiff's retaliation claim was not cognizable because she had failed to exhaust her administrative remedies prior to filing this action.





**Disparate discipline or discriminatory discharge based on race**

As Magistrate Judge Carr correctly stated, the elements of a prima facie case of disparate discipline are different from those elements needed to show a prima facie case of discriminatory discharge. (Report at 14-15). In order to establish a prima facie case of discrimination with regard to her disparate discipline claim, the plaintiff must show the following: (1) she is a member of a class protected by Title VII; (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) the disciplinary measures enforced against her were more severe than those enforced against those other employees. (Report at 15, citing Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985)).[3] In contrast, in order to establish a prima facie case of discriminatory discharge, the plaintiff must show the following: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) her position remained open or was filled by a similarly qualified individual outside the protected class. (Report at 15, citing Baqir v. Principi, 434 F.3d 733, 742 (4th Cir. 2006)). Magistrate Judge Carr analyzed the facts and correctly concluded that under either analytical framework, the plaintiff had failed to present a prima facie case.

In her objection, the plaintiff relies upon Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805 (5th Cir. 1991), for the proposition that when analyzing alleged discriminatory

---

3 In Moore, the Fourth Circuit Court of Appeals adopted the McDonnell Douglas paradigm of analysis for use in the employee discipline context.





discharge, Magistrate Judge Carr should have looked beyond the framework of analysis set forth in Baqir v. Principi and examined "the real issue of whether the defendant illegally discriminated against the plaintiff." (Pl. Obj. at 9-10, citing Amburgey, 936 F.2d at 812). The plaintiff has misquoted the text from Ambergey on page 10 of her objections.[4] (Pl. Obj. at 10). Moreover, the plaintiff's reliance upon Amburgey is misplaced, as that case is easily distinguishable from the case at bar. In Amburgey, the Fifth Circuit addressed the requisite elements of proof in an age discrimination case arising out of a termination in connection with a reduction in force. The Aubergey court instructed trial courts reviewing age discrimination cases involving reductions in force to look beyond whether most of the retained employees were in the protected age group, and examine the effect of the reduction in force on the plaintiff claiming age discrimination. The complete quotation from Amburgey fully illustrates that it has no bearing on the present case:

> As in Thornbrough [v. Columbus and Greenville R. Co., 760 F.2d 633, (5th Cir. 1985)], there was not only no statistical evidence of discrimination, but the statistics suggested the reverse. In Thornbrough, the company actually raised the average age of its employees as a result of the layoffs. Here, Amburgey was not the oldest employee dismissed, and most of the retained employees were in the protected age group. But as we said in Thornbrough, "[w]hile this evidence is probative of the age discrimination issue, it is not dispositive. The issue . . . is whether the [defendant] discriminated against [the plaintiff], not whether it discriminated against other older employees."

Amburgey, 936 F.2d at 813, citing Thornbrough, 760 F.2d at 646 n.20. In the present case,

---

4 In the first full paragraph on page 10 of the plaintiff's Objections, she credits Aubergey with the statement that "[c]ourts must not allow the mechanical formula to blind them to the real issue of whether the defendant illegally discriminated against the plaintiff." In fact, that quotation is from Ramirez v. Sloss, 615 F.2d 163, 168 (5th Cir. 1980), wherein that court addressed alleged violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1870, 42 U.S.C. § 1983, and the Ku Klux Klan Act, 42 U.S.C. § 1985(3).



#8 Cont.

Magistrate Judge Carr properly analyzed the plaintiff's discriminatory discharge claim based upon race and found that she failed to present a prima facie case because she could not establish that she was performing her job duties at a level that met her employer's legitimate expectations. (Report at 20, 6-8). In her objections, the plaintiff contends that she did not violate any of the defendant's policies, and that Magistrate Judge Carr erred by "put[ting] primary emphasis on the fact that Plaintiff received three or four disciplinary infractions over a two year period from Defendant Postmaster Tim Shaw, . . . and the Magistrate accepted this disputed disciplinary information as conclusive evidence that Plaintiff was not meeting her employer's legitimate expectations and that was the sole basis why Plaintiff could not establish that third element." (Pl. Obj. at 11-12; see also Report at 20).

There is nothing "disputed" about the progressive discipline that the plaintiff received. As Magistrate Judge Carr accurately found, "[a]ll the incidents of discipline of the Plaintiff are fully documented in the record, and she brought union grievances and some EEO charges over them as well. Although she was successful in getting some of her punishments reduced, she still remained within the relevant progressive disciplinary steps." (Report at 7). The plaintiff's allegations that she did not violate any of the defendant's policies, and her claim that she was performing her job duties at a level that met her employer's legitimate expectations at the time, are completely without support in the record. Indeed, courts have held, under a variety of civil rights laws, that it is the employer's perception of job performance, and not the employee's perception, that is controlling. See, e.g., Dejarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (Pregnancy Discrimination Act); Evans v. Tech. App. & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (Title VII), Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 848 (4th Cir 1988) (Age





Discrimination in Employment Act). The Court finds that the magistrate judge used the proper legal framework to analyze the plaintiff's claim alleging discriminatory discharge.

Next, the plaintiff contends that, in the context of discriminatory disciplinary actions, Magistrate Judge Carr should have compared the plaintiff's offenses and the resulting disciplinary action with similar offenses committed by other persons outside the plaintiff's class and the discipline they received. The plaintiff bases her argument on Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993) and Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985). (Pl. Obj. at 10-11). These are the same cases that Magistrate Judge Carr cited and relied upon in analyzing the plaintiff's prima facie case of disparate discipline. (Report at 15; see also supra at p. 7). The Court finds that the magistrate judge used the proper legal framework to analyze the plaintiff's claim alleging discriminatory discipline.

The plaintiff also argues that she was treated less favorably than Dennis Shelby (Caucasian), James Lowery (Caucasian), and Mark Conway (Caucasian), because the prohibited conduct in which she engaged was comparable in seriousness to the misconduct of those employees, all of whom are outside the protected class, but that the disciplinary measures enforced against her were more severe than those enforced against those employees.[5] (Pl. Obj. at 11-12). Specifically, the plaintiff objects to the magistrate judge's finding that she was not similarly situated to Dennis Shelby and contends that Shelby's disciplinary history was similar to hers, but that race discrimination motivated the defendant to treat her differently. (Pl. Obj. at 13-14). However, the plaintiff's claim that she and Shelby are similarly situated is not supported by

---

5 James Lowery and Mark Conway were involved in the conversation regarding the gun, the facts of which gave rise to the plaintiff's claim of retaliation under Title VII, and which will be discussed infra.





the facts of record.[6] As mentioned previously, Article 16.10 of the National Agreement between the Postal Service and the union sets out the progressive levels of discipline as well as a policy which prevents consideration of an employee's prior disciplinary record if there has been no disciplinary action initiated against the employee for a period of two years. Shelby, a Caucasian letter carrier, incurred a job-related injury on January 14, 2006, but did not report it until January 18, 2006. Shelby was given a written warning for this incident. (Docket #67-27). However, Shelby had not been disciplined for over two years before that incident. (Docket #38-23 (Shelby disciplinary file)). In contrast, the plaintiff had failed to immediately report an accident and had failed to safely perform her job duties, and was presented with a Notice of Removal. Unlike Shelby, the plaintiff had accumulated over the previous two years a disciplinary record which reflected a 7-day suspension, a 14-day suspension, and a 30-day suspension. Therefore, even though Shelby's misconduct was similar to the plaintiff's, in that each had failed to immediately report an accident, the failure to report was Shelby's only "active" infraction (that is, occurring within the two year period). While both the plaintiff and Shelby were disciplined for similar misconduct, it is uncontested that, unlike the plaintiff, Shelby had not reached the end the progressive disciplinary process when he broke the reporting rules and failed to perform his work

[6] The plaintiff's claim (Pl. Obj. at 14), with respect to Dennis Shelby's disciplinary records, that the defendant produced only one warning letter dated February 9, 2006 is not true; it is obvious that the defendant produced Shelby's Step B decision dated April 3, 2006 because the plaintiff has relied upon it. (Docket #78-12, Pl. Ex. 11, attached to Pl. Mem. Opp. S.J.). Indeed, there is no merit to the plaintiff's repeated claims (Pl. Obj. at 14, 15–17) that Shelby's disciplinary records were not made available. These records were filed with the Court on November 27, 2007 as exhibits to the defendant's motion for summary judgment. (Docket # 38-19, Shelby Letter of Warning; # 38-20, Shelby Notice of 7 day suspension; #38-21, Shelby Step B Decision; #38-22, Shelby Disciplinary Records).





in a safe manner. The disciplinary history of the two employees was not similar, and therefore the Court concludes that Shelby is not an appropriate comparator.

The plaintiff raises several other objections to Magistrate Judge Carr's report. First, the plaintiff contends that the defendant never produced a final written notice of termination stating the reason(s) for her termination. (Obj. at 13). This claim is incorrect. The document, titled "Notice of Removal," was, in fact, attached to the defendant's memorandum in support of summary judgment filed in November 2007 (Docket #38-11), as well as to the defendant's renewed memorandum in support of summary judgment (Docket #67-19), as well as to the plaintiff's memorandum of law in opposition to the defendant's renewed motion for summary judgment (Docket #78-9), and to the defendant's reply memorandum in support of summary judgment (Docket #81-5 at 28).

Next, the plaintiff contends that she never received any performance evaluations indicating she was performing her job in an inappropriate manner. (Pl. Obj. at 13). This objection is without merit. The plaintiff has not offered any evidence that the Postal Service gave formal performance appraisals to letter carriers, nor has she identified any letter carrier or other similarly situated employee who received a performance appraisal. The plaintiff's supervisor, Robin Chavis, testified that letter carriers were not evaluated. (Chavis Dep. at 47-49).[7] The reason the plaintiff never received a performance evaluation is because postal employees do not receive these evaluations.

---

7 The defendant has quoted from Chavis' deposition in his reponse to the plaintiff's objections but the actual pages to which the defendant refers are not contained in the file before this Court. See Docket #96 at 5 & n.7.





**Retaliation under Title VII**

The plaintiff next contends that the magistrate judge erred when he held that the plaintiff was unable to establish a causal connection between her protected activity and her termination because the temporal proximity was too attenuated. (Pl. Obj. at 17-18, citing Report at 21). With respect to safeguarding protected activity, Title VII makes it an unlawful employment practice for an employer "to discriminate against any of his employees . . . because [the employee] . . . has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-(a).

To establish a prima facie case under Title VII for retaliation, the plaintiff's evidence must demonstrate that: (1) she engaged in protected activity under Title VII; (2) the employer took adverse employment action against her; and (3) there was a causal connection between the protected activity engaged in by the plaintiff and the subsequent action taken by the defendant. Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004) (citations omitted). As Magistrate Judge Carr noted, the plaintiff's only evidence of causation is the temporal proximity of certain events. (Report at 22-23). The magistrate judge found that the plaintiff had last engaged in protected activity on May 31, 2005 (the date she filed a charge of discrimination) and that her notice of termination on December 8, 2005, some six months later, was too attenuated in time to show causation. (Report at 22). The Court agrees with the magistrate judge's conclusion. In Mitchell v. Secretary Veterans Affairs, 467 F.Supp.2d 544, 553-54 (D.S.C. 2006), the Court held that to prove a causal connection based on temporal proximity alone, the time between the protected activity and the adverse employment action must be "very close." Mitchell, 467 F.Supp.2d at 553-54, citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam); Davis v. State Univ. of N.Y., 802 F.2d 638, 642 (2d Cir. 1986)





(protected activity must be "closely followed by adverse actions," and one-month period was sufficient to make out a prima facie case of retaliation.). In Mitchell, the Court held that a causal connection was shown through temporal proximity when a plaintiff was terminated three weeks after he complained to his supervisor about perceived discrimination. Mitchell, 467 F.Supp.2d at 553-54. Likewise, in Fleming v. S.C. Dept. of Corrections, 952 F.Supp. 283 (D.S.C. 1996), the Court held that a transfer one month after a plaintiff engaged in protected activity was "strongly suggestive of retaliatory motive." Fleming, 952 F.Supp. at 288. In comparison, in Pascual v. Lowe's Home Centers, Inc., 193 Fed.Appx. 229 (4th Cir. 2006) (per curiam), the Fourth Circuit held that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities from the termination of that plaintiff's employment. Pascual, 193 Fed.Appx. at 233. In the present case, the magistrate judge properly recommended judgment for the defendant on the retaliation claim.

In her objections, the plaintiff argues that Magistrate Judge Carr evaluated the wrong sequence of events when analyzing and dismissing her retaliation claim. (Pl. Obj. at 18). The plaintiff contends:

> Defendant retaliated against Plaintiff for engaging in prior acts of protected activity of filing grievances and EEOC charges against him [sic] by subjecting Plaintiff to progressive disciplinary measures. During the latter sequence of events involving Plaintiff's fall while delivering mail on October 29, 2005, Robin Chavis, under the direction and with the final approval of Defendant Shaw, initiated disciplinary action against Plaintiff on December 6 and 8, 2005. Plaintiff was issued a notice of removal letter at that time, which was to be effective in 30 days. It is Plaintiff's appeal to this disparate progressive disciplinary action taken against her, under which she contested her removal, and the Defendant's subsequent actions that constitute retaliation.

(Pl. Obj. at 18).

After a close study of the record, the Court finds that the magistrate judge evaluated the



#14 CWH

correct sequence of events. As mentioned previously, the plaintiff challenged the Notice of Removal (received on December 21, 2005), through the union grievance procedures and through the EEOC process, and the Postal Service allowed her to work pending these appeals. Her union grievance was not solved informally or at the Step B level but went to a formal arbitration hearing, and following a full hearing on March 14, 2006, the arbitrator upheld the removal as for just cause on April 29, 2006. The present litigation arises out of the EEOC administrative complaint that stemmed from the Notice of Removal.

As the defendant correctly notes, the plaintiff has confused the December 8, 2005 Notice of Removal with the emergency placement imposed on the plaintiff on February 2, 2006 due to an incident which had occurred the day before at the workplace, when the plaintiff and fellow postal workers James Lowery and Mark Conway had a conversation about a postal worker who carried a gun to work and killed several co-workers. During the conversation, the plaintiff stated that she was considering buying a gun because she feared for her life. Lowery offered to sell her a gun which he had in his car. This conversation was overheard by the plaintiff's immediate supervisor, Robin Chavis, who contacted Postmaster Shaw. (Docket # 78-15 at 9-13 (Chavis Dep.)). As a result, the next day, as the plaintiff completed her route, she was met by Shaw, a postal inspector, and two armed North Charleston policemen who detained, searched, and questioned the plaintiff about a gun. The plaintiff was removed and banned from property under threat of arrest by Postmaster Shaw, and placed on "off duty" status (without pay) as part of an emergency placement arising out of safety concerns. The plaintiff grieved the emergency placement resulting from the gun conversation with her union, and also filed a complaint with the EEOC.





With respect to plaintiff's grievance filed with the union with respect to the gun incident, the Step B team ruled on March 14, 2006 that there was no evidence that she intended to harm anyone at the Post Office. Thus, the grievance was resolved in the plaintiff's favor and she was compensated for her lost wages for the balance of one day, February 2, 2006. Thereafter, the plaintiff withdrew her pending EEOC complaint about the gun incident and acknowledged that in doing so she was waiving any right to further complain. (Docket # 67-55). When the plaintiff withdrew her pending EEOC complaint regarding the gun incident, she abandoned her discrimination claim at the administrative level, and in doing so failed to sufficiently exhaust the claims to permit district court review. It is well-settled that a Title VII plaintiff is required to exhaust administrative remedies prior to bringing an action in district court. See Bryant v. Bell Atlantic Maryland Inc., 288 F.3d 124, 132 (4th Cir. 2002) ("Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC."). Thus, to the extent that the plaintiff alleges that the discipline surrounding the gun incident was retaliation for prior protected activity, this retaliation claim should be dismissed, because the plaintiff withdrew her EEOC complaint regarding the incident and therefore failed to exhaust her administrative remedies.

The plaintiff mistakenly claims that she exhausted her administrative remedies because her grievance was heard by the Step B team. It is apparent that the plaintiff has confused exhaustion of the union grievance process with the administrative exhaustion required before a civil suit may be filed. Furthermore, the plaintiff's claim that the Step B team "ordered" her back to work (Pl. Obj. at 20) is incorrect. The Step B team did not direct that she be reinstated, but only ordered that she be compensated for loss of pay incurred on February 2, 2006 and that the



#16 CWH.

emergency placement be expunged from her record. (Docket # 94-10).

In conclusion, the plaintiff claims that she was terminated by the defendant as a result of disparate disciplinary treatment because of her race, which resulted in wrongful termination, and further that she was subjected to retaliation for engaging in protected activities. The plaintiff has failed to prove a prima facie case as to these claims, because she cannot show that she was performing her job duties at a level that met her employer's legitimate expectations. In addition, the plaintiff's retaliation claim fails because she failed to exhaust the EEOC' s administrative process prior to bringing this action. Therefore, the defendant's motion for summary judgment is granted.

**AND IT IS SO ORDERED.**

**C . WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

November 20, 2008
Charleston, South Carolina



